GEORGE F. EDMUNDS, *administrator upon the estate of* DAVID
LEE *v.* TIMOTHY FOLLETT, JOHN BRADLEY, MORILLO
NOYES, AND OTHERS.

[IN CHANCERY.]

*Construction of deed.*

A description of the premises in a deed as "water lots number one, two, three, four,
five, six, seven, eight, nine, the westerly half of ten, eleven, twelve, thirteen and
fourteen," and in which there was a subsequent reference made to the buildings
on lots number eleven, twelve, thirteen and fourteen, which were upon the east-
erly halves of them, construed as conveying the whole of these lots.

APPEAL FROM THE COURT OF CHANCERY. This was a bill
to foreclose a mortgage executed by the defendants Follett &
Bradley on the 15th of June, 1843 ; Noyes and the other defen-
dants being subsequent grantees under Follett & Bradley. No
question was made except as to the extent of the premises con-
veyed by the mortgage in which the description was as follows :
"the following tract or parcel of land situate, lying and being in
the town of Burlington aforesaid, and described as follows, to wit :

water lots number one, two, three, four, five, six, seven, eight, nine, the westerly half of ten, eleven, twelve, thirteen and fourteen, all lying on the shore of Lake Champlain and bounded on the west by the waters thereof, and on the east by Water street, so called, in the village plot of said town of Burlington, on each lots number one, six, seven and the westerly half of ten, is a dwelling house of wood, on number eleven and twelve is a stone store and wharf with six ware houses thereon, on number thirteen and fourteen is a brick hotel with outbuildings attached thereto."

The defendants contended that only the westerly half of lots number eleven, twelve, thirteen and fourteen were conveyed, and that all of the description subsequent to the first enumeration of the lots and commencing, "all lying on the shore of Lake Champlain," was put into the deed to identify, ascertain and give the boundary and location of the lots, and not to describe the premises conveyed or intended to be conveyed.

It appeared that at the time of the execution of the mortgage, Follett & Bradley were the owners of the whole of all the lots enumerated except number ten, of which they owned only the westerly half, and that the stone store above mentioned was upon the easterly half of lots number eleven and twelve, and the brick hotel upon the east half of lots number thirteen and fourteen, and that the defendant Bradley, both before and after the execution of the mortgage, spoke to the mortgagee and his representatives of the store and hotel as a part of the premises to be mortgaged, or mortgaged, and as making the security ample.

The court of chancery, May 20th, 1856,—Peck, Chancellor,— decreed a foreclosure of the premises as embracing the whole of the lots number eleven, twelve, thirteen and fourteen, from which decree the defendants appealed.

*J. Maeck*, for the defendants.

1. The first description of water lots number one, two, three, four, five, six, seven, eight, nine and the westerly half of ten, eleven, twelve, thirteen and fourteen is certain, and conveys the whole of the first nine lots and the westerly half of the other lots.

2. The residue of the words in the deed are put in for the purpose of showing the location of the lots.

3. If the words last referred to are in any sense repugnant or contradictory to the first description, they are to be rejected, and the first description, which is certain and which operates on each of the lots to ascertain extent, must prevail.

It is well settled that where a deed contains more than one description of the land conveyed, and they do not agree with each other, the less certain yields to that which is more certain ; and that a deed may be false in some particulars as to the land conveyed, and yet be a good deed. Particulars are only essential when necessary to ascertain the estate conveyed. Where that can be ascertained, they are rejected if they do not agree with the more certain description. Parol evidence, where certain lands are by the deed conveyed, is not admissible to enlarge or diminish the grant. This case, in the view we take of it, comes within the well known rule that the court are not at liberty to interpret that which needs no interpretation. If there is a plain meaning in the deed as to what land is conveyed, it is not to be refined out and a more doubtful one substituted in its stead. The following authorities fully sustain all the above propositions; *Wheelock* v. *Moulton et al.*; 15 Vt. 519 ; *Hibbard* v. *Hurlbut*, 10 Vt. 173 ; *Cutler* v. *Tufts*, 3 Pick. 272 ; *Jackson* v. *Stevens*, 16 Johns. 110 ; *Howell* v. *Soule*, 5 Mason 410 ; *Eggleston* v. *Bradford*, 10 Ohio 316 ; *Eld* v. *Card*, 2 N. H. 175 ; *Jackson* v. *Marsh*, 6 Cowen 281; *Benedict* v. *Gaylord*, 11 Conn. 332.

*G. F. Edmunds*, for the orator.

The opinion of the court was delivered by

REDFIELD, CH. J.    The only question in the present case is in regard to the proper construction of the deed under which the plaintiff claims title.

The mere words used are consistent enough with either view urged. They might be made to signify well enough the westerly half of lots ten, eleven, twelve, thirteen and fourteen. But when it is considered that the deed specifies a stone store and wharf and six ware houses on eleven and twelve, and a brick hotel and outbuildings on thirteen and fourteen, and that at this time the mortgagors owned the whole of these lots, and these buildings were

chiefly upon the east end of the lots, and that it was only number ten to which they had only the title of the westerly half, we can entertain no doubt the import of the terms "westerly half" is to be limited to number ten, and the following numbers to be connected with the former part of the series, thus conveying the whole of the lots except ten. And this view is equally consistent with the words and perhaps more consistent with the strict and literal import of the terms and the nice grammatical construction, which is indeed not very decisive either way in a matter of doubtful construction. But the other considerations are, as it seems to us, unanswerable.

The decree of the chancellor is affirmed and the case remanded to the court of chancery to be carried into effect, allowing further time for redemption according to equity and good conscience.